1

Hart L. Robinovitch (AZ SBN 020910)
**ZIMMERMAN REED LLP**
14646 North Kierland Blvd., Suite 145
Scottsdale, AZ  85254
Telephone: (480) 348-6400
Facsimile: (480) 348-6415
Email: hart.robinovitch@zimmreed.com

2

3

4

5

*Attorneys for Plaintiffs and the Class*

6

*(Additional Counsel listed below)*

7

8

### UNITED STATES DISTRICT COURT

9

### DISTRICT OF ARIZONA

10

11

Thomas Treakle and Randall Joe Thigpen, individually and on behalf of all others similarly situated,

Case No. _____

12

Plaintiffs,

**CLASS ACTION COMPLAINT**

-v-

13

The Reinalt-Thomas Corp., and Discount Tire Co. Inc.,

**DEMAND FOR JURY TRIAL**

14

Defendant.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

1.     Plaintiffs Thomas Treakle and Randall Joe Thigpen ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated, by and through their undersigned attorneys, against Defendants The Reinalt-Thomas Corp. ("Reinalt"), and Discount Tire Co., Inc. ("Discount") (collectively hereinafter "Reinalt," "Discount" or "Defendants").

2.     Plaintiffs' allegations are based upon their personal knowledge as to allegations regarding themselves, and as to all other allegations based on information and belief and the investigation of their attorneys.

3.     Defendants are independent tire dealers or distributors, meaning their business is not owned or controlled by a tire manufacturer or brand-name owner ("Independent Tire Dealer"). *See* 49 C.F.R. § 574.3(c)(1). Class Members are Plaintiffs and others who purchased tires from Defendants.

4.     This putative class action seeks monetary damages, restitution, and injunctive and declaratory relief from Defendants, arising from their willful failure to comply with federal laws requiring them to assist in the tire-registration process with Class Members who purchased tires from Defendants.

5.     Though not well known by the public, the federally mandated tire-registration process is critical to the safety of American motorists and their passengers. Registration of purchasers' tire and contact information enables tire manufacturers to notify purchasers of safety-related recalls, so that purchasers can stop driving on the defective tires and return the tires for replacement or credit.

6.     Federal law requires tire manufacturers to notify tire owners promptly of recalls by first-class or certified mail.  However, without the owners' contact and tire information, recalls are doomed to fail, in turn exposing consumers to injury or death.

7.     As explained more fully below, federal law requires that, for each tire sold, Independent Tire Dealers like Defendants must either: (1) provide the tire purchaser with a paper tire-registration form containing the Independent Tire Dealer's contact

information and the entire, federally mandated tire identification number ("TIN") of each tire sold, so that the purchaser can add his or her name and contact information to the tire-registration form and send it to the tire manufacturer; (2) complete such a form and send it to the tire manufacturer for the consumer; or (3) electronically transmit that information to the tire manufacturer for the purchaser. *See* 49 C.F.R. § 574.8(a). If the Independent Tire Dealer chooses the second or third options, it must send the information within 30 days. Id.

8.      During the Class Period (defined below), Defendants sold millions of tires to Class Members without registering those tires with the tire manufacturer in the time required by the federal rule or providing Class Members with the tire-registration forms necessary to enable them to register the tires themselves.

9.      Defendants' conduct spared its tire sales personnel from taking the extra few moments required to comply with federal law, freeing up those sales personnel to sell more tires. Defendants were unjustly enriched by the sales it made during the time it would have taken to register Class Members' tires with the tire manufacturer or provide Class Members with the tire-registration forms.

10.     This dangerous practice has exposed and continues to expose Class Members to harm, and deprives them of the full benefit of their tire purchases. For example, Defendants harmed Class Members by not providing what they paid for. Class Members paid for tires registered in accordance with federal law, but received tires that were not registered as mandated by federal law and were therefore unsafe. Class Members not only paid for the tires themselves, but also paid the cost of Defendants' compliance with federal law, which is intended to make purchasers reachable by tire manufacturers them in the event of a tire recall.

11.     Defendants' failure to comply with the tire-registration requirements constitutes a misrepresentation that those tire sales comply with federal law, when they do not.

12.     Alternatively, non-registration constitutes an actionable representation by omission because it leaves Class Members with the false impression that tire manufacturers can reach them in the event of a safety-related recall.

13.     Failure to register Class members' tires created an unreasonable, unlawful, imminent risk to Class members by causing them to drive on the tires without knowledge of defects and recalls.

## PARTIES

14.     Plaintiff Thomas Treakle resides in the town of Monument, County of El Paso County, Colorado.  Mr. Treakle purchased tires from Discount during the Class Period.  Mr. Treakle brings claims in both his individual capacity and a representative capacity over Defendants' failure to comply with the tire-registration law.

15.     Plaintiff Randall Joe Thigpen resides in the city of Greenville, Pitt County, North Carolina.  Mr. Thigpen purchased tires from Discount Tire during the Class Period. Mr. Thigpen brings claims in both his individual capacity and a representative capacity over Defendants' failure to comply with the tire-registration law.

16.     Defendant The Reinalt-Thomas Corp. is a Michigan corporation with a principal place of business at 20225 N. Scottsdale Road, Scottsdale, Arizona 85255-6456.

17.     Reinalt, which does business under the trade name or fictitious business names Discount Tire, America's Tires, and others, is the largest independent tire dealer in the United States.  Reinalt has pleaded in previous court actions that it has "over 1,000+ stores in 35 states."

18.     On information and belief, Reinalt may be served with process through its registered agent, CT Corporation System, 3800 N. Central Ave., Suite 460, Phoenix, AZ 85012.

19.     Reinalt's failure to follow federal law on tire registration when it sold tires to Plaintiffs, depriving them of their bargain for safe tires and putting them at risk of injury or death, was either (1) the result of a corporate decision made at Reinalt's Arizona headquarters, or (2) the result of a corporate failure to investigate and monitor whether

Reinalt's local retail stores were following federal law and if they were not doing so, to ask why not.

20.    Defendant Discount Tire is an Arizona corporation with its principal place of business at 20225 N. Scottsdale Road, Scottsdale, Arizona 85255-6456, the same address as Reinalt.  Upon information and belief, Defendant Discount Tire is a wholly owned subsidiary of Reinalt, and, like Reinalt, also does business under the trade names and fictitious business names "Discount Tire" and "America's Tire."

21.    Discount was founded in Michigan in 1960.    Discount moved its headquarters to Arizona in 1970.

22.    *Forbes* listed Discount as among America's largest private companies in 2018, with more than 22,000 employees and an estimated $4.8 billion in revenue.

23.    Discount maintains a retail store at 206 Greenville Blvd SW, Greenville, NC 27834, among its many other locations.

24.    Upon information and belief, Plaintiffs assert that there is a unity of interest and ownership between Defendant Reinalt and Defendant Discount, such that all individuality and separateness between these Defendants ceased to exist, and that Discount is the alter ego of Reinalt. Plaintiffs allege that Reinalt controls, manages, and dominates the business affairs of Discount to suit Reinalt's convenience, and that requisite formalities are not observed in connection with the business and financial affairs of these Defendants.

25.    Reinalt and Discount Tire are under common management, directorship, and control.  Business web sites list some of the same individuals as officers of Reinalt and officers of Discount.  Until his death in January 2018, each company was ultimately controlled by the founder and chairman of Reinalt and Discount, Bruce T. Halle.

26.    The Dun & Bradstreet business web site reports that Reinalt-Thomas has 1,130 "Corporate Family Connections."  On information and belief, Plaintiffs assert that Reinalt operates interchangeably with, not separately from, its corporation "connections."

4

27.     On information and belief, Plaintiffs assert that Reinalt has created a subsidiary company to own each of its Discount Tire retail stores, but that Reinalt nevertheless dictates the policies and procedures that all the retail stores must follow.

28.     Policies and procedures regarding tire registration are among those dictated by Reinalt to its Discount Tire stores.

29.     Defendants operate all their retail stores as "Discount Tire" except where precluded in certain parts of the United States by prior-use trademark holders.  In those states, Defendants use the names Discount Tire Company, Discount Tire Direct, America's Tire Co., and America's Tire.

30.     Reinalt promotes its stores and sells tires and wheels nationwide through an online platform under the domain www. discounttire.com, which Reinalt owns.

31.     In 1997, Reinalt created and registered the online domains tires.com, discounttire.com, americastire.com, and discounttiredirect.com, in order to promote Reinalt's retail stores and the company's selection of products and services.

32.     Reinalt controls what each employee at the various Discount Tire stores does and how they do it.  This is true even as to Reinalt's other subsidiaries such as Discount Tire Direct, Inc.

33.     Reinalt owns all of the trademarks used by Discount, including but not limited to trademark numbers 2597123, 2673789, 4639389 and 1319968.

34.     Discount's failure to follow the tire-registration rule when it sold tires to Plaintiffs, depriving them of their bargain for safe tires and putting them at risk of injury or death, was either (1) the result of a corporate decision made at Discount's Arizona headquarters, or (2) the result of a corporate failure to investigate and monitor whether Discount's local retail stores were following the federal rule, and if not, why not.

### JURISDICTION AND VENUE

35.     This Court has subject-matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section 1332(d), because: (1) this is a class action involving more than 100 class members; (2) some members of the proposed Class are citizens of a state

different from the Defendants; and (3) the amount in controversy exceeds the sum of $5,000,000, exclusive of interest and costs.

36.    Alternatively, this Court has subject-matter jurisdiction because of Plaintiffs' claims arising under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 et seq.

37.    This Court has personal jurisdiction over Defendants because Defendants conduct significant business in Arizona.  Both Defendants have their principal places of business in Arizona.  Defendants voluntarily submitted to the jurisdiction of Arizona when they engaged in substantial business activities in Arizona and purposefully directed their actions towards Arizona.

38.    Venue is proper in this Court pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District; Defendants are believed to maintain records in this District relevant to their stores' compliance or noncompliance with the federal tire-registration requirement; and Defendants are subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

### *The problem: Ineffective recalls are causing death and injury to consumers*

39.    As conceded on Discount's own internet site, tires are among the most important components on a motor vehicle. "Of all the safety features on your vehicle . . . your tires are one of the most important," Discount states on one web page. "Your tires are the only thing that connect your vehicle to the road, so it makes sense that they play such a major role in your safety on the road."

40.    Tires must be durable and versatile enough to maintain friction through thousands of acceleration, braking, and turning events under varying weather conditions, such as snow and rain.

41.    According to data published in the *Modern Tire Dealer*, a leading industry publication, in 2013, the tire industry shipped 278.3 million new tires for passenger

vehicles and light trucks.[1]  That total included 44 million original equipment tires for new passenger vehicles and 201.6 million replacement tires for passenger vehicles.  Another 4.4 million original equipment tires and 28.3 million replacement tires were shipped for light trucks. In 2016, the tire industry was a $ 38.1 billion industry, as illustrated below.[2]



42.    Tire-related crashes plague the United States, in part because of a recall system that is widely acknowledged as broken.

43.    In 2017, according to the National Highway Traffic Safety Administration ("NHTSA"), 738 people died in tire-related crashes in the United States. From 2007 to 2012, about 33,000 tire-related crashes occurred annually, resulting in about 19,000 injuries each year, according to the National Transportation Safety Board ("NTSB").[3]

44.    According to government and media reports, it is impossible to determine how many of these deaths, injuries, and accidents were caused by recalled tires because police typically do not look for that information.    However, these reports have documented examples of such deaths and injuries.

---

[1]  *MTD* is a periodical publication (available in digital and print formats) intended to "ensure that independent tire dealers and their suppliers succeed." *See* http://mediakit.moderntiredealer.com/Default.aspx, accessed July 23, 2018.

[2] *See* http://www.moderntiredealer.com/uploads/stats/mtd-51st-facts-1.pdf, last accessed May 18, 2018.

[3]  NTSB Special Report at 1.

45.    In 2014, the NTSB launched a special investigation following four tire-related accidents in Florida, Louisiana, Arizona and California that killed 12 people and injured 42 others.  The board found that recalls were recovering only one in five defective tires—a so-called recall "recovery rate" of only 20%.  More than half of recalled tires remained in use.

46.    According to a New England tire retailer quoted anonymously in the publication Tire Business, "[T]he bottom line is, 99.9 percent of us aren't" following the tire-registration rules.

47.    A NBC News report in 2015 on unregistered tires provided examples of motor-vehicle fatalities that occurred while drivers were operating vehicles with recalled, unregistered tires.

48.    These accidents include a multi-passenger church van that crashed in Lake City, Florida in 2014.  In that crash, the driver thought he might have an issue with a tire, but since the defect was internal, he could not find the problem and kept driving. The tire failed and the van flipped over.  Two passengers were killed, and eight were injured:



49.    The tire in the Florida crash had been recalled more than a year earlier because of an internal defect.

50.    An employee of the church that owned the tire told NTSB investigators that the retail store did not ask him for information to register the tire with the manufacturer.

51.    Because the manufacturer lacked information about the purchaser, church administrators did not know the tire posed a danger and needed to be removed from service.

52.    The manufacturer took extra steps to determine who purchased the tire, but still sent its recall notice to an outdated address for the church.

53.    In a second such accident in 2014, a woman was killed and her husband gravely injured after a recalled tire blew out on a pickup truck and forced their SUV off the road on Interstate 95 in South Carolina:



54.    The couple's son alleged in a lawsuit that a tire recalled by Michelin caused the South Carolina accident.  The pickup truck's owner and driver did not know about the recall.

55.    The defective tires in the North Carolina sale caused a crash, killing one person and causing others to suffer permanent, disabling injuries.  Through discovery, the plaintiffs found the tire store never provided the purchasers in their case with registration cards or registered their tires, nor had it provided forms or registration to any of their customers for years until the lawsuit.  Because of the store's failure to comply with the law, when the tire manufacturer, Michelin North America, Inc., issued a recall

of the tires, the notices could not reach the victims in time.  Consequently, the tires caused fatal and disabling injuries to the victims.

56.     These examples illustrate how independent tire dealers and distributors harm consumers financially, and expose them to risk of additional harm and injury, by selling tires without complying with the applicable federal registration rules.

57.     As referenced above, though 3.2 million tires were recalled between 2009 and 2013, most of the drivers using them were unaware of the recalls.[4]

58.     Because of the recalls' ineffectiveness, only about 44% of the recalled tires were accounted for, according to the NTSB.  That suggests that 1.8 million recalled tires remained on the road just from those years alone.

59.     Federal regulations require that each tire manufacturer compile a list of individuals or entities that have purchased its tires, so tire manufacturers can contact these individuals and entities in the event of a recall. See 49 C.F.R. § 574.7.

60.     Federal investigators have determined that the failure of Independent Tire Dealers to comply with the federal tire registration law is a major contributor to the ineffectiveness of tire recalls.[5]  NTSB reported that manufacturer-controlled tire dealers registered nearly all the tires they sold, but only about 10% of tires sold by Independent Tire Dealers are registered.

61.     During the NTSB's investigation of the 2014 Florida church-van crash, Michelin provided a survey indicating that *less than 2 percent* of purchased tires were registered.  Michelin also told the NTSB "historically the rate of tire registration has been in the single digits among independent dealers."[6]

62.     At a NTSB tire-safety symposium in 2014, the tire retailers' trade organization "acknowledged that only a small percentage of tires sold by independent

---

[4] NTSB Special Report at 11.
[5] *Id.* at 15.
[6] *Id.* at 12.

10

dealers are ever registered."[7]   The trade organization expressed interest in progress through future technologies, but only if it did not cost the retailers any money.[8]

### *Tire recalls are lethally ineffective because of the broken registration system*

63.     Congress decided that all replacement tires sold by independent tire dealers in the United States must be registered with their manufacturer so the manufacturer can notify the tires' purchasers about safety defects and recalls.

64.     Under the statute, a tire manufacturer must "cause to be maintained a record of the name and address of the first purchaser of each . . . tire it produces[.]" 49 U.S.C. § 30117(b)(1).

65.     Congress made tire registration one of the safety standards in Chapter 301 of the National Traffic and Motor Vehicle Safety Act.

66.     The main purpose of Chapter 301 is "to reduce traffic accidents and deaths and injuries resulting from traffic accidents." 49 U.S.C. § 30101.

67.     To that end, Congress decided it was "necessary . . . (1) to prescribe motor vehicle safety standards for motor vehicles and motor vehicle equipment in interstate commerce; and (2) to carry out needed safety research and development." *Id.* (emphasis added).

68.     States may enforce standards identical to those in Chapter 301, and government agencies may require even higher performance standards for motor-vehicle equipment purchased for their own use. 49 U.S.C. § 30103(b).

69.     Compliance with these safety standards explicitly "does not exempt a person from liability at common law." *Id.* at § 30103(e).

70.     "[N]oncompliance of original equipment with a motor vehicle safety standard" prescribed under Chapter 301 causes the motor vehicle on which the equipment is installed to be deemed defective and noncompliant with the law. 49 U.S.C. § 30102(b)(1)(F).  For the purpose of the tire-registration statute, "'[o]riginal equipment'

---

[7] *Id.* at 14.
[8] *Id.* at 14–15.

means motor vehicle equipment (including a tire) installed in or on a motor vehicle at the time of delivery to the first purchaser." 49 U.S.C. § 30102(b)(1), 30102(b)(1)(C). **Thus, a tire not registered under the rules is *de facto* defective.**

71.    Congress authorized NHTSA to enact regulations to give effect to the Safety Act. *See* Exec. Order No. 11357, 32 F.R. 8225, as reprinted in 49 U.S.C. § 30101.

72.    NHTSA fleshed out the tire-registration requirements by promulgating regulations located at 49 C.F.R. § 574.

73.    In 2008, through formal comment and rulemaking, the agency revised 49 C.F.R. § 574 to make clear that independent tire distributors and dealers would have three ways—and *only* three ways—to assist tire manufacturers with tire registration.

74.    As alleged above, an Independent Tire Dealer is "one whose business is not owned or controlled by a tire manufacturer or brand name owner." 49 C.F.R. § 574.3(c)(1). Defendants are Independent Tire Dealers. As Independent Tire Dealers, Defendants are, in relevant part, required to do one of the following each and every time they sell tires:

> (a) provide each tire purchaser with a paper tire-registration form[9] to send to the tire manufacturer at the consumer's expense, on which the Independent Tire Dealer has recorded the entire TIN of each tire sold or leased to the tire purchaser, along with the Independent Tire Dealer's name and street address. The tire purchaser needs to add his or her name and address to the form and mail it to the tire manufacturer or the tire manufacturer's designated agent to complete the tire registration process;

> (b) record the following information on a paper tire-registration form and return that form to the tire manufacturer or the tire manufacturer's designated agent at no cost to the tire purchaser within a specified time period (generally 30 days): the tire purchaser's name and address, the entire TIN of each tire sold or leased to the tire purchaser, and the Independent Tire Dealer's name and street address; <u>or</u>

---

[9] Paper tire-registration forms must comply with 49 C.F.R. § 574.7(a).

12

(c) electronically transmit the following information to the tire manufacturer or the tire manufacturer's "designee" at no cost to the tire purchaser within a specified time period (generally 30 days): the tire purchaser's name and address, the entire TIN of each tire sold or leased to the tire purchaser, and the Independent Tire Dealer's name and street address.

*See* 49 C.F.R. § 574.8(a)(1).

75.    Independent Tire Dealers who choose option No. 3 above—electronic transmission of the information to the tire manufacturer—must include "a statement to that effect on the invoice" and provide the invoice to the tire purchaser. *See* 49 C.F.R. § 574.8(a)(4).

76.    This tire-registration system asks little of Independent Tire Dealers—only that they take the time to jot down the TIN from each tire sold on a form or enter it into a computer, add some contact information, and either hand the form to the consumer to mail, or transmit that information (on paper or electronically) within 30 days to the tire manufacturer.

77.    However, tire retailers generally and Defendants specifically have willfully ignored even these minimal requirements, possibly so that its sales personnel can spend those extra few moments selling more tires.

78.    As government and media investigations have confirmed, *there is no reliable way for a consumer with unregistered tires to obtain this information.*[10]

79.    To even attempt to obtain registration or recall information, in the absence of any government database, a consumer would have to (1) suspect a problem with the tires in the first place; (2) know or learn that their tire has a "tire identification number" ("TIN") that they need to look up; (3) locate the TIN, which may be on the viewable

---

[10]    *See, e.g.*, NTSB Special Report at 11–15; Rich Gardella and Jay Blackman, *System to Recall Defective Tires 'Completely Broken,' Says Official*, NBC News (Oct. 27, 2015), https://www.nbcnews.com/news/us-news/system-recall-defective-tires-completely-broken-say-officials-n452506; *Unsafe tires a deadly risk on U.S. roads*, CBS News (Dec. 8, 2014), https://www.cbsnews.com/news/deadly-risks-of-unsafe-tires.

outside of the tire, but also may be facing inward and therefore not viewable without putting the car on a lift; (4) find the tire manufacturer's website and hope that it provides a way to search the status of tires by TIN; and (5) if the registration or recall can't be confirmed via such a website, somehow find another way to notify the tire maker. NHTSA designed the tire-registration scheme in section 574.8 to spare the consumer this trouble.

80.    A complaint submitted to NHTSA in February 2003 alleged that Defendant Discount Tire was not following the tire-registration rule at three of its stores in the Phoenix area.  The complainant suggested that the Discount Tire store at 407 West Bell Road, Phoenix, AZ 85023 had not assisted with tire registration by providing customers with the tire-registration form required at the time by federal law.  The complainant further asserted that they inquired about registration forms at two other stores and neither had registration forms either.

81.    "It appears this is standard to this company. Thousands of consumers have been wronged by this company's failure to comply with 49 CFR 574.8," the complaint alleged.

82.    It is unclear what NHTSA did in response to the February 2003 complaint, but Discount presumably knows.

83.    Although Discount asserts on its internet "Tire Safety" page that tires "are one of the most important" safety features on consumers' vehicles,[11] Discount's web site omits any mention of tire registration, much less the importance of registration in keeping drivers and passengers safe.

### Facts specific to named plaintiff Thomas Treakle

84.    Plaintiff Treakle purchased tires from the Discount Tire store on Jackson Creek Parkway in Monument, Colorado on three occasions: March 22, 2017; February 16, 2018; and August 2, 2018.

---

[11] https://www.discounttire.com/learn/tire-safety.

85.    Mr. Treakle paid $370.86 in the 2017 transaction, $408.71 in the 2018 transaction, and $303.43 the 2019 transaction.  Each time, he expected safe tires in return.

86.    On none of these three occasions did the Discount store provide Mr. Treakle a paper tire-registration form that he could finish and mail to his tire manufacturer per 49 C.F.R. § 574.8(a)(1)(i).

87.    On none of these three occasions did the Discount store complete a paper tire-registration form and send it to Mr. Treakle's tire manufacturer for Mr. Treakle per 49 C.F.R. § 574.8(a)(1)(ii).

88.    On none of these three occasions did the Discount store electronically transit Mr. Treakle's information to the tire manufacturer within 30 days of his purchase per 49 C.F.R. § 574.8(a)(1)(iii).

89.    None of Mr. Treakle's invoices indicate that Discount electronically transmitted the federally required information to the manufacturer of his tires, as required by 49 C.F.R. § 574.8(a)(4) when the seller complies with the tire-registration method in 49 C.F.R. § 574.8(a)(1)(iii).

90.    As a result, Mr. Treakle was omitted from his tire manufacturers' databases.

### *Facts specific to named plaintiff Randall Joe Thigpen*

91.    On June 27, 2018, Mr. Thigpen bought tires from a Discount store in Greenville, North Carolina.

92.    Mr. Thigpen paid $410.62 and expected safe tires in return.

93.    The Discount store did not provide Mr. Thigpen a paper tire-registration form that he could finish and mail to his tire manufacturer per 49 C.F.R. § 574.8(a)(1)(i).

94.    The Discount store did not complete a paper tire-registration form and send it in to Mr. Thigpen's tire manufacturer for Mr. Thigpen per 49 C.F.R. § 574.8(a)(1)(ii).

95.    The Discount store did not electronically transit Mr. Thigpen's information to the tire manufacturer within 30 days of his purchase per 49 C.F.R. § 574.8(a)(1)(iii).

96.    Mr. Thigpen's invoice does not indicate that Discount electronically transmitted the federally required information to the manufacturer of her tire, as required by 49 C.F.R. § 574.8(a)(4) when the seller complies with the tire-registration method in 49 C.F.R. § 574.8(a)(1)(iii).

97.    As a result, Mr. Thigpen was omitted from his tire manufacturer's database.

98.    When these Plaintiffs purchased their tires from Discount, they paid for safe tires, not defective tires.

99.    As a matter of federal law, unregistered tires are unsafe.  Therefore, Discount sold Plaintiffs unsafe tires. Plaintiffs did not receive the benefit of their bargains.

100.    Plaintiffs expected to be reachable by their tires' manufacturers in the event the manufacturers discovered safety defects in their tires. Plaintiffs were entitled by law and by their purchase to be reachable about safety defects in their tires.

101.    Defendants, however, have failed to provide the assistance or information necessary to notify the tire manufacturers that Plaintiffs purchased their tires.

102.    Plaintiffs have been omitted from the databases by Defendants' common practice of ignoring the tire-registration law.  As a result, tire manufacturers have no reliable way to reach Plaintiffs about any defects in their tires.

103.    Plaintiffs' situations are typical and representative of millions of consumers who bought tires from independent tire retailers such as Defendants, without being provided with registration cards or having the tires registered for them, in violation of federal law.

## **CLASS ALLEGATIONS**

104.    Plaintiffs brings this action as a class action pursuant to Federal Rule of Civil Procedure 23.  Plaintiffs seek to represent the following class:

16

The "**Nationwide Class**," which consists of: All persons in the United States and its territories who (a) purchased a tire from Defendants or their subsidiaries, (b) during the Class Period,[12] (c) for their personal use, rather than for resale or distribution, (d) where Defendants did not provide them with a registration card, send in a card to the manufacturer for them within 30 days of purchase, or electronically transmit their information to the tire manufacturer within 30 days of purchase. Excluded from the Nationwide Class are Defendants' current or former officers, directors, employees, Defendants' parents, any entity in which Defendants have a controlling interest; counsel for Plaintiffs and Defendants; and the judicial officer to whom this lawsuit is assigned.

105.    Should the Court decline to certify the Nationwide Class described above, Plaintiffs seek certification of state Subclasses corresponding to Class members' states of residency.

106.    Plaintiffs reserve the right to expand, limit, modify, or amend these class definitions, including the addition of more subclasses, in connection with his motion for class certification, or any other time, based upon, inter alia, changing circumstances and/or new facts obtained during discovery.

107.    The members of the Class are so numerous that joinder is impractical. While the exact number of class members is presently unknown to Plaintiffs, based on Defendants' volume of sales, Plaintiffs estimate each Class numbers in at least the tens of thousands.

108.    There are numerous questions of law and fact common to the Class that predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

(a) Whether Defendants engaged in unfair, unlawful, or fraudulent business practices under the states' consumer-protection laws;

(b) Whether Defendants misrepresented and/or failed to disclose material facts about their tire-registration process;

(c) Whether Defendants have made false or misleading statements of fact concerning the existence of their tire-registration process;

---

[12]   The Class Period shall run from January 1, 2014 to the present time.

(d) Whether Defendants' conduct, as alleged herein, was intentional and knowing;

(e) Whether Class members are entitled to damages and/or restitution, and in what amount;

(f) Whether Defendants are likely to continue using false or misleading sales of unregistered tires such that an injunction is necessary; and

(g) Whether Plaintiffs and Class members are entitled to an award of reasonable attorneys' fees, pre-judgment interest and costs of suit.

109.    Plaintiffs' claims are typical of the claims of the members of the Class because they, like all members of the Class, purchased tires from Defendants while Defendants made either (1) a false representation to them that the tires were safe, when in fact they were not safe because they were not registered, or (2) a half-truth or omission by leaving Plaintiffs with the false impression that their tire manufacturers would be able to reach them in the event of a recall.   Accordingly, Plaintiffs have no interests antagonistic to the interests of any other member of the Class.

110.    Plaintiffs will fairly and adequately represent and protect the interests of the members of each Class. Plaintiffs do not have any interests adverse to those of the Class Members.  Plaintiffs have retained competent counsel experienced in class-action litigation, and they intend to prosecute this action vigorously.

111.    A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable.  While the aggregate damages sustained by the Class are significant, the individual damages incurred by each member of the Class resulting from Defendants' wrongful conduct are too small to warrant the expense of individual lawsuits.  The likelihood of individual Class Members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

112.    The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants.    For example, one court might enjoin Defendants from performing the challenged acts, whereas another might not.    Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

113.    The conduct of Defendants is generally applicable to the Class as a whole and Plaintiffs seek, inter alia, equitable remedies with respect to the Class as a whole.    As such, the systematic, uniform policies and practices of Defendants make declaratory relief appropriate.

## FIRST CAUSE OF ACTION

### Breach of the Implied Warranty of Merchantability

114.    Plaintiffs repeat, reallege, and incorporate by reference the allegations set forth in Paragraph 1 through 113 of this Complaint, as though fully set forth herein.

115.    Defendants are "merchants" as defined under Colorado and North Carolina law.

116.    Because they were unregistered, the tires sold to Plaintiffs were not "merchantable" at the time Defendants sold them to Plaintiffs.    That is, the tires were not "fit for the ordinary purposes for which such goods are used."    N.C. Gen. Stat. § 25-2-314; Colo. Rev. Stat. § 4-2-314.

117.    The defect—Defendants' failures to comply with the tire-registration law with respect to Plaintiffs' purchases—proximately caused the breaches.

118.    Plaintiffs were injured financially by the unmerchantable goods.

119.    Plaintiffs and Class members have not only been injured in their property, they are also threatened with further injury from driving on unregistered tires.

120.    Plaintiffs and Class Members' interactions with Defendants suffice to create privity of contract between Plaintiff and Class Members, on the one hand, and Defendants, on the other hand.

121.    Plaintiffs and Class Members have complied with all obligations under the warranty or otherwise have been excused from performance of said obligations by Defendants' conduct described herein.

122.    Defendants' breaches were willful because Defendants knew they were required to follow federal law governing tire registration.

## SECOND CAUSE OF ACTION

### Violation of the Magnuson-Moss Warranty Act ("MMWA")

### 15 U.S.C. § 2301 et seq.

123.    Plaintiffs repeat, reallege, and incorporate by reference the allegations set forth in Paragraph 1 through 122 of this Complaint, as though fully set forth herein.

124.    Plaintiffs and Class members are "consumers" within the meaning of the MMWA.  15 U.S.C. § 2301(3).

125.    The unregistered tires are "consumer products" within the meaning of the MMWA.  15 U.S.C. § 2301(1).

126.    Defendants are "suppliers" and "warrantors" within the meaning of the MMWA.  15 U.S.C. § 2301(4)-(5).

127.    The amount in controversy in each Plaintiff's individual claim meets or exceeds the sum of $25.  The total amount in controversy of this action in sum exceeds $50,000, exclusive of interest and costs, based on all claims to be determined in this lawsuit.

128.    As set forth herein, Defendants breached their warranties with Plaintiffs and Class members.

129.    During the Class Period, Defendants marketed and sold unregistered tires nationwide without complying with any of the registration methods in 49 C.F.R. § 574.8(a)(1).  Defendants' unlawful conduct had the following effects:  Plaintiffs and Class members were not aided in registration as required by federal law, were omitted from tire manufacturers' databases, were not made aware of their rights to replace tires

in the event of a tire recall, and could not be reached by manufacturers when manufacturers recalled tires.

130.   As a direct and proximate result of Defendants' breach of implied warranties pursuant to 15 U.S.C. § 2310(d)(1), Plaintiffs and Class members were injured and are entitled to damages.

131.   Plaintiffs and Class members are also entitled to seek costs and expenses, including attorneys' fees, under the MMWA.  15 U.S.C. § 2310(d)(2).

## THIRD CAUSE OF ACTION

### Violation of state consumer-protection statutes

132.   Plaintiffs repeat, reallege, and incorporate by reference the allegations set forth in Paragraph 1 through 131 of this Complaint, as though fully set forth herein.

133.   Defendants' unlawful conduct had the following effects: Plaintiff and Class members were not aided in registration as required by federal law, were omitted from tire manufacturers' databases, were not made aware of their rights to replace tires in the event of a tire recall, and could not be reached by manufacturers when manufacturers recalled tires.

134.   Plaintiffs therefore hereby state a claim for violation of the Colorado Consumer Protection Act, C.R.S. § 6-1-101 et seq.

(a) As described above, Defendants engaged in an unfair or deceptive trade practice.

(b) The challenged practice occurred in the course of Defendants' business.

(c) The challenged practice significantly affects the public as actual or potential consumers of the Defendants' goods and services.

(d) Plaintiffs were consumers under the statute.

(e) Plaintiffs suffered injury in fact to a legally protected interest when they paid Defendants money for safe tires and instead received tires that were unregistered and therefore unsafe under federal law.

(f) The challenged practices by Defendants caused injury to Plaintiffs.

21

135.    Plaintiffs also hereby state a claim for violation of the North Carolina Unfair Trade Practices Act, N.C. Gen. Stat. § 75-1.1 et seq.

(a) Defendants engaged in "unfair or deceptive acts or practices in or affecting commerce" when they marketed, sold, or distributed unregistered tires in North Carolina by engaging in the acts and practices described above.

(b) Defendants' acts, omissions, misrepresentations, practices, and non-disclosures were unfair, deceptive, and fraudulent.

(c) Plaintiffs were consumers under the statute.

(d) During the Class Period, Defendants' unlawful conduct had a substantial effect on North Carolina commerce.

(e) Defendants have engaged in unfair and deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1.

(f) Plaintiffs are entitled under N.C. Gen. Stat. § 75-16 to bring a civil action to remedy Defendants' violations and collect treble damages.

136.    Accordingly, Plaintiffs and Class members seek all relief available under these consumer-protection statutes.

## FOURTH CAUSE OF ACTION

### Unjust Enrichment

137.    Plaintiff repeats, realleges, and incorporates by reference the allegations set forth in Paragraph 1 through 136 of this Complaint, as though fully set forth herein.

138.    Under similar standards in Plaintiffs' home states and elsewhere, Plaintiffs may bring an equitable claim to recover a payment made to a defendant.  To recover under an unjust-enrichment theory in North Carolina, a plaintiff must show that (a) a measurable benefit was conferred on the defendant, (b) the defendant consciously accepted that benefit, (c) the benefit was not conferred officiously or gratuitously, and (d) unless a contract is imposed by law, an unjust enrichment will result.  In Colorado, likewise, a plaintiff must show that (a) the defendant received a benefit, (b) at the

plaintiff's expense, (c) under circumstances that would make it unjust for the defendant to retain the benefit without commensurate compensation.

139.    Plaintiffs and Class members have conferred a measurable benefit on Defendants by purchasing the unregistered tires while not being assisted in tire registration through any of the methods in 49 C.F.R. 574.8(a)(1).

140.    As a result of the wrongful conduct described in this Complaint, including collection of revenue and profits on sales of unregistered tires without complying with federal law, Defendants have been and will continue to be unjustly enriched.

141.    Retention of such revenues under these circumstances would be unjust and inequitable.

142.    Plaintiff and Class members are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants because of such wrongful practices.

## FIFTH CAUSE OF ACTION

### Common-Law Negligence

143.    Plaintiffs repeat, reallege, and incorporate by reference the allegations set forth in Paragraph 1 through 142 of this Complaint, as though fully set forth herein.

144.    To establish actionable negligence under the laws of Plaintiffs' home states and elsewhere, a plaintiff must demonstrate a duty, a breach of that duty, loss or damage caused by the breach, and actual loss or damage to another. All such essential elements exist here.

145.    Defendants had and have a duty to exercise reasonable care in the marketing and selling of tires, including complying with the federal safety standard that mandates tire registration.

146.    Defendants also had and have a duty created by federal law to aid tire purchasers by one of the three tire-registration methods mandated in 49 C.F.R. 574.8(a)(1).

147.    Defendants breached this duty by their conduct previously described above.

148.    As a proximate result, Defendants have caused Plaintiffs and the members of the Class injury related to the purchase of their tires.

149.    Defendants owed these duties to Plaintiffs and the members of the Class because the injuries alleged above were foreseeable by Defendants, and because federal law obligated Defendants to participate in tire registration.

150.    Had Defendants used due care, the injuries to Plaintiffs and Class members would not have occurred in the ordinary course of events.

151.    Plaintiffs and the member of the Class seek compensatory damages for their monetary losses if any, plus interest and the cost of this action.

<u>**SIXTH CAUSE OF ACTION**</u>

**Negligence per se**

152.    Plaintiffs repeat, reallege, and incorporate by reference the allegations set forth in Paragraph 1 through 151 of this Complaint, as though fully set forth herein.

153.    Defendants had and have a duty to comply with above-cited federal rule.

154.    Defendants violated federal law by knowingly or intentionally failing to comply with any of the three tire-registration methods mandated in 49 C.F.R. 574.8(a)(1), and by continuously selling unregistered tires without complying with the law.

155.    Failure to comply with 49 C.F.R. § 574.8 constitutes negligence per se.

156.    By their acts and omissions, including violating federal law as described above, and by their negligent and reckless disregard of the interest and safety of consumers, and of standards and practices within their own industry, Defendants have proximately caused and substantially contributed to damages to Plaintiffs and members of the Class.

157.    Plaintiffs and Class members have suffered and will continue to suffer damages as the proximate result of the failure by Defendants to comply with federal law.

## SEVENTH CAUSE OF ACTION

### Breach of Contract

158.    Plaintiffs repeat, reallege, and incorporate by reference the allegations set forth in Paragraph 1 through 157 of this Complaint, as though fully set forth herein.

159.    For good and valuable consideration given, Defendants entered express or implied contracts for the sale of goods with Plaintiffs and the class and their successors in interest, which contracts include an implied term that Defendants would comply with all requirements of the Safety Act and 49 C.F.R. § 574.8.

160.    In selling tires that they would not assist in registering with the manufacturers as required by federal law, Defendants breached the terms of their contracts with Plaintiffs and class members, including the compliance with law noted above.

161.    As a direct and proximate result of Defendants' breaches of their contracts with Plaintiffs and the class, Plaintiffs and the class have suffered, continue to suffer, and will suffer losses and damages in an amount believed to be in excess of $75,000.00.

## EIGHTH CAUSE OF ACTION

### Injunctive Relief

162.    Plaintiffs repeat, reallege, and incorporate by reference the allegations set forth in Paragraph 1 through 161 of this Complaint, as though fully set forth herein.

163.    Plaintiffs and Class members are purchasers of unregistered tires sold by Defendants.

164.    Defendants' willful and continuous sale of a large quantity of unregistered tires or tires to Plaintiffs and Class members without complying with the tire-registration law constitutes an actual and substantial injury to Plaintiffs and Class members.

165.    Plaintiffs and Class members have no other complete, speedy, and adequate remedy at law by which to prevent harm to themselves.

166.    Plaintiffs and Class members are likely to purchase tires in the future, given that the average life of a tire is typically less than the life of a car.  Moreover, many future

sales would be from Defendants as Discount is the dominant replacement tire dealer/distributor in many areas, offering competitive prices.  Thus, the majority of class members remain at risk of future injury from non-registration unless injunctive relief mandating registration is ordered.

167.    Plaintiffs are therefore entitled to an injunction (a) requiring Defendants to register or confirm registration of all tires previously sold, under the methods mandated in 49 C.F.R. 574.8(a)(1), and (b) preventing Defendants from selling unregistered tires or tires without complying with the tire-registration methods mandated in 49 C.F.R. 574.8(a)(1).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the members of the Class (and of potential subclasses) demand a jury trial on all claims so triable and judgment against Defendants as follows:

A.    An order certifying that this action may be maintained as a class action, that Plaintiffs be appointed Class Representatives, and that Plaintiffs' counsel be appointed Class Counsel;

B.    Restitution and/or disgorgement of amounts paid by Plaintiffs and members of the Classes for the purchase of the replacement tires, together with interest from the date of payment;

C.    Actual damages;

D.    An order granting injunctive relief;

E.    Statutory prejudgment interest;

F.    Reasonable attorneys' fees and the costs of this action, including costs of administration and notice;

G.    Other legal and equitable relief under the causes of action state herein; a

H.    A trial by jury on all issues so triable; and

I.    Such other relief as this Court may deem just and proper.

1

## DEMAND FOR JURY TRIAL

2          Plaintiffs, individually and on behalf of the Class, demand a trial by jury on all

3    issues so triable.

4

5    Dated: March 20, 2020                        Respectfully submitted,

6                                                 **ZIMMERMAN REED LLP**

7

8                                          By: s/ Hart L. Robinovitch
                                               Hart L. Robinovitch (AZ SBN 020910)
9                                              14646 North Kierland Blvd., Suite 145
                                               Scottsdale, AZ  85254
10                                             Telephone: (480) 348-6400
                                               Facsimile: (480) 348-6415
11                                             Email: hart.robinovitch@zimmreed.com

12                                             **CUNEO GILBERT & LaDUCA, LLP**
                                               Charles J. LaDuca
13                                             Brendan S. Thompson
                                               Yifei ("Evelyn") Li
14                                             4725 Wisconsin Avenue, NW, Suite 200
                                               Washington, DC 20016
15                                             Telephone: (202)789-3960
                                               Email:charles@cuneolaw.com
16                                             Email: brendant@cuneolaw.com
17                                             Email: evelyn@cuneolaw.com

18                                             **LOCKRIDGE GRINDAL NAUEN**
19                                             **P.L.L.P.**
                                               Robert K. Shelquist, #021310X (MN)
20                                             Eric N. Linsk, #0388827 (MN)
                                               100 Washington Avenue South
21                                             Suite 2200
                                               Minneapolis, MN 55401
22                                             Telephone: (612) 339-6900
23                                             Facsimile: (612) 339-0981
                                               Email: rkshelquist@locklaw.com
24                                             Email: rnlinsk@locklaw.com

25

26

27

28

                                        27

**THE KESSLER LAW FIRM PLLC**
Chris C. Kessler, #18696 (NC)
PO Box 8064
Greenville, NC 27835
(252) 321-2535
Email: cck@kesslerlawfirmpllc.com

**MCDOUGALL LAW FIRM, LLC**
J. Olin McDougall, II
Post Office Box 1336
115 Lady's Island Commons
Beaufort, SC 29901-1336
Telephone (843) 379-7000
Fax (843) 379-7007
Email: lin@mlf.law

***Attorneys for Plaintiffs***